59 So.2d 592

### DAVIS v. STATE.
#### 7 Div. 101.

Supreme Court of Alabama.
April 10, 1952.

Rehearing Denied June 26, 1952.

S. A. Lokey, Columbiana, for appellant.

448

Si Garrett, Atty. Gen., and Wallace L. Johnson, Asst. Atty. Gen., for the State.

LIVINGSTON, Chief Justice.

The appellant, Howard Davis, alias Samp Davis, was tried in the Circuit Court of Shelby County, Alabama, under an indictment charging him with murder in the first degree. He was convicted of murder in the first degree and his punishment fixed at death by electrocution. The appeal is under the so-called automatic appeal statute. Title 15, §§ 382(1) and 382(2), pocket part, Code 1940.

The State's evidence tended to prove that appellant, on the night of October 30, 1948, accompanied by Ory McGinnis, Walter McKinney, John Henry Broughton and appellant's brother, Jack Davis, went to a dance in St. Clair County, Alabama, where they consumed a considerable amount of whiskey. Shortly after midnight they left the dance in appellant's automobile with appellant driving. Some distance from the home of Ory McGinnis, appellant's automobile was stopped on Highway No. 25 by the deceased, C. L. Prince. Deceased got out of his automobile with a shot gun in his hand. Appellant and Ory McGinnis got out of appellant's automobile and deceased engaged them in conversation about a debt owing from appellant and his broth-

er to deceased. Upon Ory McGinnis' promise to see that the debt was paid, appellant and Ory McGinnis got back in appellant's car and drove away. The deceased also got back in his automobile and followed the car of appellant for some distance and then turned around and went back in the direction from which he came. Appellant drove his car to the home of Ory McGinnis where McGinnis got out of the car. Ory McGinnis' home is off Highway 25 and is located on what is known as Dead Hollow Road. Dead Hollow Road is in the form or shape, more or less of a horse shoe, both ends of which intersect Highway 25. After Ory McGinnis got out of the car, appellant continued around Dead Hollow Road with the intent, apparently, of driving back to Highway 25. Before appellant reached Highway 25 he met the car of deceased on Dead Hollow Road. The evidence is conflicting as to whether the automobile of deceased was stopped or moving at the time the two cars came in sight of each other. The State's evidence tended to show that deceased's car was stopped and that he was standing behind it: that appellant stopped his car, got out and knocked the deceased down with his fist, kicked him in the face, and that while deceased was lying on the ground appellant went to the back of appellant's car, 'got a bumper jack and returned to where the deceased lay on the ground, hit the deceased several times about the face and head with the jack. Appellant then told one of the other men in his car to get the deceased's gun out of deceased's car. The man did so. After sweeping the place clean around where deceased lay, appellant got back in his car and drove away. Appellant told Walter McKinney and John Henry Broughton to take the gun and bumper jack and throw them in the river: McKinney and Broughton hid the gun and bumper jack in some honeysuckle vines, and the next day dropped them in sink holes. But when officers later searched for the gun and jack they could not be found. Appellant also told the other occupants of his car that he would kill the first one who said anything about the occurrence. The de-

ceased was found the next morning: his body was lying slightly to the rear of his automobile, and was badly mutilated. The automobile of deceased was standing off on the shoulder of the road on the right-hand side in the direction in which it was going with sufficient room for other cars to pass.

Walter McKinney and John Henry Broughton testified as eyewitnesses and with slight variations in their testimony, to substantially the facts set out above. The testimony of Ory McGinnis was substantially the same as that of McKinney and Broughton as to facts occurring before he got out of appellant's car. McGinnis also testified:

"Q. Did you see him any more that night? A. No, sir.

"Q. I mean Samp, did you see Samp? A. Yes, sir, I saw Samp.

"Q. When did you see him? A. I saw Samp about three o'clock.

"Q. Where did you see him? A. He come to my house.

"Q. Who was with him, if any one? A. I didn't see anybody but him.

"Q. Had you retired, gone to bed? A. Yes, sir, I had gone to bed.

"Q. I will ask you to state whether or not you got up? A. Yes, sir, I got up and went to the door.

"Q. And you saw Samp? A. Yes, sir.

Q. What did Samp say to you, if anything, at that time? A. He said, we done beat that son of a bitch to death and you are the onliest one that know about it and you had better not tell it or we will kill you.

"Q. What else did he say? A. That is all, I told him I didn't know nothing to tell.

"Q. What did he say then, if anything? A. Nothing, he left.

"Q. That was about three o'clock Sunday morning? A. Yes, sir, around three o'clock."

While of course it is not all of the evidence in the case, we think the foregoing recitals are sufficient for purposes now at hand.

Unquestionably the evidence is sufficient to take the case to the jury on the question of murder in the first degree and the general charge in that regard was refused without error.

Appellant insists that his conviction must stand upon the testimony of Ory McGinnis, and the eyewitnesses Walter McKinney and John Henry Broughton, who testified that they saw appellant kill the deceased. Appellant's counsel seeks to make accomplices of these witnesses and to invoke the rule that a conviction cannot stand on the uncorroborated testimony of an accomplice. The mere fact that a person witnesses a crime does not make him an accomplice. Snowden v. State, 27 Ala.App. 14, 165 So. 410. We pretermit the question as to whether McKinney and Broughton were accomplices. From the record, it is clear that McGinnis was not an accomplice under the law. We are also clear to the conclusion that the testimony of McGinnis tended to corroborate the testimony of McKinney and Broughton within the meaning of well-established rule in our cases. Berry v. State, 231 Ala. 437, 165 So. 97; Sorrell v. State, 249 Ala. 292, 31 So.2d 82.

No objection was interposed to the testimony of McGinnis as to what appellant told McGinnis about three o'clock on the morning of the homicide, and which we have set out above. But under the provisions of the automatic appeal statute we have carefully considered it.

Confessions or inculpatory admissions are prima facie involuntary and inadmissible. McGuire v. State, 239 Ala. 315, 194 So. 815; Daugherty v. State, 24 Ala.App. 591, 139 So. 439. However proof of the circumstances attending their narration, which establish the voluntary character of the statements, is sufficient without the customary prerequisite of laying a formal predicate for their admission. Logan v. State, 251 Ala. 441, 37 So.2d 753; Reedy v. State, 246 Ala. 363, 20 So.2d 528. That situation prevails here with respect to the statement made by appellant

450

to McGinnis. The statement appears to have been entirely voluntary.

The photographs of deceased's body, though gruesome, were properly admitted in evidence under the well-established rule of our cases. Maund v. State, 254 Ala. 452, 48 So.2d 553; Grissett v. State, 241 Ala. 343, 2 So.2d 399; McKee v. State, 33 Ala.App. 171, 31 So.2d 656; certiorari denied 249 Ala. 433, 31 So.2d 662.

We have carefully followed the mandates of the automatic appeal statute and examined all of the evidence in the record. We have examined the written charges refused to appellant. We find no error and the cause is affirmed.

Affirmed.

All the Justices concur, except GOODWYN, J., not sitting.